UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IRMON C. WILLIAMS,

    Plaintiff,

v.                                        Case No. 2:09-cv-177
                                        HON. GORDON J. QUIST
ZITA WISE, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Irmon C. Williams, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Zita Wise, R.N., Captain Pennie Chapel, Kenneth Codere, R.N., Sergeant Robert Hockings, Ann Morin, R.N., Assistant Resident Unit Supervisor Dennis Gerard, Corrections Officer Unknown Loonsfoot, Corrections Officer Unknown Klemett, Resident Unit Officer Rick VanAlstine, Resident Unit Officer Unknown Jacobson, Corrections Officer Unknown Bouchard, and Shift Commander John Doe. Plaintiff's remaining claim is for Eighth Amendment violations against defendants for exposing him to a chemical agent in violation of his medical order to be removed from the area when chemical agents are used.

Plaintiff alleges in his complaint that he is a chronic asthmatic and has suffered from numerous near fatal attacks, has endured long hospitalizations, has been intubated, and has been prescribed a variety of medications for his condition. Plaintiff has been incarcerated within the MDOC since July 2, 2002, and was transferred to AMF in May of 2006. In March of 2007, plaintiff

suffered an asthma attack due to environment tobacco smoke (ETS), "compounded with the gas and a chemical agent that had been previously used on another prisoner inside the housing unit," which had been circulated via the central air vents. On April 26, 2007, plaintiff was seen by Dr. Donn M. Dougherty, who granted plaintiff a detail to be removed from the unit prior to usage of a chemical agent. On August 1, 2007, Defendants Loonsfoot, Klemett and Codere used a chemical agent in the unit without first removing plaintiff from the area, which resulted in plaintiff suffering an asthma attack. Defendants Loonsfoot, Klemett and Codere refused to obtain medical treatment for plaintiff. In addition, plaintiff claims that defendants Chapel and Morin were indifferent to plaintiff's medical needs.

On August 17, 2007, plaintiff was denied a shower by defendant Loonsfoot. On November 23, 2007, plaintiff pressed the emergency call button because he was having trouble breathing, but no one responded. Plaintiff then stopped Defendant Hockings while he was doing rounds and sought medical assistance. Defendant Hockings told plaintiff that his medical issues were not a part of the program, and advised plaintiff to write a medical kite. Defendant Hockings indicated that staff was busy gassing another prisoner. Plaintiff told defendant Hockings that he had a medical detail to be removed from the unit during usage of chemical agents, and defendant Hockings responded by calling plaintiff a "darkie" and disregarded his complaints. Defendant Hockings denies speaking with plaintiff about this incident. Plaintiff has submitted affidavits from other prisoners who support plaintiff's version of these facts. Plaintiff claims that defendant John Doe ignored plaintiff's medical detail and ordered use of a chemical agent in the unit without first having plaintiff removed from the area.

On March 11, 2009, Plaintiff heard defendant VanAlstine inform another prisoner that they were going to gas prisoner Bell. Plaintiff then told defendant VanAlstine that he had a

medical detail, but defendant VanAlstine stated that nobody was going to be removed from the unit, and that if he had to breathe the "poison," then so did the prisoners, even the "special people." Plaintiff then complained to defendant Bouchard, who told plaintiff that he was busy and refused to call anyone to come get plaintiff. Plaintiff subsequently suffered an asthma attack as the result of exposure to a chemical agent. Plaintiff claims that defendants Jackson and Gerard ignored plaintiff's medical detail and ordered use of a chemical agent in the unit without first having plaintiff removed from the area.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other

evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff has shown that he had received a medical order requiring his removal from the area where chemical agents were used. It is undisputed that plaintiff had this order and also that

plaintiff was not removed from his cell when chemical agents were used on three occasions. Nevertheless, defendants argue that this action should be dismissed, because they did not act with deliberate indifference to plaintiff's medical needs by failing to remove him from his cell before using chemical agents.

Defendant Hockings argues that the claims against him should be dismissed because he was unaware that plaintiff should have been removed from the area before using chemical agents on November 23, 2007. Defendant Hockings states that plaintiff never attempted to speak with him. This contradicts plaintiff's version of the facts. Defendant Hockings asserts that plaintiff was in C-unit and the chemical agent was used in A-wing. Defendant Hockings states that the door was closed between the wings, and the air handling system was shut off to minimize the contamination. The air purge system was used immediately after the chemical agent was sprayed to clear out the unit. Further, defendant Hockings claims that plaintiff has not shown that he suffered with any serious medical issue or sought any medical care after the chemical agent was used. Plaintiff asserts that he was in distress and had difficulty breathing after this incident. Plaintiff asserts that he was denied and/or received unnecessarily delayed medical treatment after the incident. In the opinion of the undersigned, a question of fact exists whether defendant Hockings violated plaintiff's Eighth Amendment rights by not removing him from the area before using a chemical agent.

Defendants VanAlstine, Jacobson and Gerard argue that they did not violate plaintiff's Eighth Amendment rights for failing to remove him from his cell when they used a chemical agent on March 11, 2009. Defendant Jacobson consulted with a nurse who told him that because of the sub-zero temperatures outside plaintiff would be better off in his cell while chemical agents were used. Again, defendants claim that plaintiff's cell was on the opposite side of the unit. They closed the doors and turned off the air handlers to prevent the chemical agent from spreading.

The unit purge system was used in an attempt to remove the remaining agent when it was no longer needed. Defendants have not shown that plaintiff's medical orders required them to first consult a health care nurse to determine whether the doctor's order should be followed. Nowhere did the order give defendants or a nurse discretion to make an independent decision as to whether the order should be followed. Whether defendants acted with deliberate indifference by failing to remove plaintiff from the area of the chemical agent use, as required by the order, is a factual dispute. In the opinion of the undersigned, summary judgment should not be granted on this issue. *See Williams v. Curtin*, No. 09-1381 (6th Cir., Jan. 31, 2011) (attached).

Defendant Pennie Chappel argues that she should be dismissed for lack of personal involvement. Defendant Chappel was the Acting Assistant Deputy Warden on August 1, 2007, when plaintiff alleges that he should have been removed from the housing unit while chemical agents were being used. Defendant Chappel was not present in the facility at the time the chemical agents were being used. She had already worked during the day and left at 4:30 p.m. The chemical agent was used at 7:52 p.m. Plaintiff simply sues defendant Chappel because of her supervisory responsibilities and not because of her involvement in the alleged underlying actions.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932

(1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990). Plaintiff has not explained why he named Pennie Chappel as a defendant. It appears that defendant Chappel was named solely

because of her supervisory capacity. In the opinion of the undersigned, defendant Chappel should be dismissed from this action.

Defendant Anne Morin argues that she provided plaintiff with prompt medical care on August 1, 2007. Plaintiff asserts that defendant Morin failed to provide plaintiff with medical treatment until almost two hours passed after his exposure to the chemical agent. Nurse Morin states that she provided treatment to plaintiff soon after she arrived at the prison to begin her work shift. Plaintiff's initial exposure to the chemical agent happened before defendant Morin began her work shift at the prison. Assuming that plaintiff is correct and that he asked for health care treatment before defendant Morin arrived for her 12:00 A.M. shift, nurse Morin could not have been deliberate indifferent to plaintiff's medical needs because she was not even at the prison. Nurse Morin entered plaintiff's unit at 12:20 A.M. Plaintiff was taken to Health Care Services at 12:35 A.M. Plaintiff returned to his cell at 12:59 A.M. In the opinion of the undersigned, nurse Morin could not have been the cause of any delay that plaintiff may have had for health care treatment. Nurse Morin promptly visited plaintiff's unit soon after she started her work shift. Nurse Morin was not deliberately indifferent to plaintiff's request for health care.

Defendants Hockings, Gerard, Jacobson, and VanAlstine alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635,

641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, a question of fact exists whether defendants violated plaintiff's Eighth Amendment rights.

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.* In the opinion of the undersigned because a question of fact exists regarding whether plaintiff's rights were violated by defendants Hockings, Gerard, Jacobson, and VanAlstine for failing to remove plaintiff before using chemical agents and for causing his delay for medical care, qualified immunity is not an available defense at this time.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #26) be granted as to defendants Chapell and Morin and denied as to defendants Hockings, Gerard, Jacobson and VanAlstine.[1]

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2011

---

[1] To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).